IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DARRELL CAMPBELL, et al., <br><br> Plaintiffs, | MEMORANDUM DECISION AND ORDER DENYING MOTIONS TO DISMISS, DENYING MOTION FOR ATTORNEY FEES, AND DENYING MOTION TO CERTIFY APPEAL |
| vs. | |
| CASTLE STONE HOMES, INC., a Utah corp., <br><br> Defendants. | Case No. 2:09-CV-250 TS |

I. INTRODUCTION

Defendants move to dismiss this action on two grounds.  First, under Fed.R.Civ.P 13(a), because the claims in this case were compulsory counterclaims in an earlier state court action.  Second, under 28 U.S.C. § 1927, because the filing of the Complaint in the present case multiplies legal proceedings with the possibility of multiple or contradictory judgments.  In the alternative, Defendants seek certification for an interlocutory appeal. The Court finds that only some of the claims brought by two of the thirty-two Plaintiffs herein were compulsory counterclaims in the earlier state court action.  However, because

1

all of the claims in the earlier state court action have now been dismissed without prejudice, the Court finds that the compulsory counterclaim doctrine does not bar those claims in the present case.  The Court further finds that neither dismissal nor attorney fees are warranted under § 1927.  Finally, the Court denies the Castle Stone Defendants' request to certify this action for an interlocutory appeal.

## II.  FACTUAL BACKGROUND

Plaintiffs herein allege that, between 2005 and 2007, they each entered into a "Client Contract" (contracts) with Castle Homes.  They allege that these contracts were investment contracts.

On October 23, 2008, Defendants Castle Stone Homes, Inc., Martin Tanner, and Mills Crenshaw (the Castle Stone Defendants) brought suit in state court (the state court action) against Campbell and Vera, who are two of the thirty-two Plaintiffs in the present case.  The state court action also named as defendants the individuals and law firm representing Plaintiffs in the present action.  The claims against Campbell and Vera in the state court action were for fraud and misrepresentation, defamation and false light, tortious interference, civil conspiracy, and breach of contract.

In support of the claims of breach of contract and fraud and misrepresentation, the state court action's complaint alleges that Vera, Campbell, and Mariely Campbell[1] entered into a contract with Castle Stone to construct a home on one lot in Saratoga Springs, Utah. It further alleges they obtained a construction loan for that purpose from Heritage West and

---

[1]Mariely Campbell is a party to the state court action, but not a party herein.

"made false and misleading statements about their ability to pay-off or make payments on the mortgage loan they obtained"[2] in order to induce Castle Stone Homes to enter into the contracts at issue. In support of the state court action's claim for breach of contract, its complaint alleges the Campbells[3] subsequently "said that although their employment had not changed, they did not have the ability to pay monthly payments or pay off the construction loan unless their home sold,"[4] and then subsequently breached those contracts.

In support of its claims of defamation and false light, tortious interference, and civil conspiracy, the state court action further alleges as follows: Campbell and Vera hired a law firm, provided it with false information, and obtained an opinion letter called the Vantus Letter.  Campbell and Vera then hired a new law firm.  In concert with the new law firm Campbell and Vera: "contacted customers and clients of Castle Stone Homes, Inc., by e-mail, by phone and in person;" provided customers and clients of Castle Stone Homes, Inc., with the Vantus Letter which was based on false and inaccurate facts they [Campbell and Vera] provided [to the Vantus law firm], falsely showing [the Castle Stone Defendants] violated securities law, committed fraud, deliberately made false statements and committed mortgage fraud,[5] and "falsely stated to customers and clients of Castle Stone Homes, Inc.

---

[2]Def.'s Mot. to Diss., Ex. A (State court action complaint), at ¶ 25.

[3]The state court action's complaint alleges defendant therein, Mariely Campbell, also made this representation, but she is not a party herein.

[4]Def.'s Mot. to Diss. at ¶ 16.

[5]Def.'s Mot. to Diss., Ex. A (state court action's complaint) at ¶ 20.

that [the Castle Stone Defendants] are criminals who should be in jail; and falsely stated that [the Castle Stone Defendants] intended to disappear and go into hiding."[6] They also allege that Vera and Campbell encouraged other individuals to breach those individuals' contracts with Castle Stone, by encouraging others to file lawsuits, and revoke powers of attorney.

According to the state complaint, the alleged communications that support the claim for defamation all occurred subsequent to the issuance of the Vantus letter. That letter is dated September 3, 2008.

On November 9, 2009, Vera, Campbell, and several other state court defendants filed an answer to the state court action. Among the defenses they raised was the failure to state a claim.[7]

A week after the state case action was filed, Plaintiffs Vera and Campbell, and four of the other Plaintiffs herein, filed a securities fraud case against the Castle Stone Defendants and Heritage West Credit Union in federal court (the 2008 securities fraud case)[8], alleging that the client contracts were investment contracts. The Complaint in the 2008 securities fraud case was amended twice, with a third attempt to amend being stricken. The amendments to the 2008 securities fraud case added several of the other Plaintiffs herein as plaintiffs therein. On its own motion, the Court in the 2008 securities

---

[6]*Id.* at ¶ 40.

[7]*Id.* Ex. B at 6.

[8]Case No. 2:08-CV-834 DAK.

fraud case entered an Order to Show Cause why it should not be dismissed for failure to timely serve the Complaint against the defendants therein.  On March 19, 2009, the Plaintiffs therein, also Plaintiffs herein, responded with a consent to dismissal without prejudice of the 2008 securities fraud case.  The Consent to Dismissal stated that the Plaintiffs therein intended to file a new federal case bringing the same claims, but adding new parties and facts.  Later that same day, March 19, 2009, the present action was filed.  On March 25, 2009, the 2008 securities case was dismissed without prejudice.

The present action alleges securities fraud, breach of contract, and several other claims against the Castle Stone Defendants and Heritage West Credit Union, Terry Elliott and Maria Powell (the Heritage West Defendants), another named defendant, and several unnamed Does.

The Castle Stone Defendants filed the present Motion to Dismiss and the Heritage West Defendants joined in the Motion.  The Motion was argued on September 10, 2009.  On September 11, 2009, the state court granted the motion to dismiss by the plaintiffs therein, the Castle Stone Defendants herein.  The state court action was dismissed without prejudice.

## III.  MOTIONS

The Castle Stone Defendants move to dismiss and for an award of attorney fees on the following bases: (1) that Plaintiffs' actions in the 2008 securities fraud case violated the Rules of Civil Procedure regarding filing amended complaints; (2) that Plaintiffs' claims herein and in the 2008 securities fraud case are waived because they were compulsory

counterclaims in the state court action; and (3) by filing this action and the 2008 securities action containing claims that were compulsory claims in the state court action, Plaintiffs have needlessly, unreasonably and vexatiously multiplied the proceedings within the meaning of § 1927.  The Heritage West Defendants join in the Motion but did not file a supporting memorandum.

Plaintiffs contend that the Castle Stone Defendants ignore the fact that the 2008 securities fraud case was subsequently dismissed without prejudice.  Plaintiffs also contend that their securities claims herein were not compulsory counterclaims in the state court action.  In the alternative, Plaintiffs contend that even if the compulsory counterclaim doctrine does apply, it could not apply to the thirty Plaintiffs herein who were not parties to the state court action.

As discussed above, the day after the hearing in this case, the state court action was dismissed without prejudice.  Plaintiffs contend that this recent dismissal of the state court action moots the present Motions to Dismiss.  The Castle Homes Defendants contend that the dismissal of the state court action does not render their Motion moot.  In the alternative, the Castle Homes Defendants move for an order certifying the order on the present Motion for an interlocutory appeal.

## IV.  SECTION 1927

Defendants assert that the Plaintiffs' actions in the 2008 securities fraud case plus the filing of the present case together unreasonably multiplied the proceedings within the meaning of 28 U.S.C. § 1927.  Defendants request dismissal and an award of attorney

fees under § 1927.   Plaintiffs argue no relief is available under § 1927 because the

dismissal of the 2008 securities fraud case was without prejudice and, therefore, left them

free to subsequently assert those claims in the present case.

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the
> United States . . . who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy
> personally the excess costs, expenses, and attorneys' fees reasonably
> incurred because of such conduct.[9]

"[A] court should make such an award only in instances evidencing a  serious and

standard disregard for the orderly process of justice. This is an extreme standard."[10]

Further, the "text of § 1927, unlike that of Rule 11, indicates a purpose to compensate

victims of abusive litigation practices, not to deter and punish offenders.  Section 1927

. . . allows a court to require an attorney to satisfy personally the excess costs, expenses,

and attorneys' fees reasonably incurred because of [vexatiously multiplicative] conduct."[11]

The Court finds that § 1927 does not provide a basis for dismissal of this present

action.  As noted above, § 1927 provides only for compensation for fees incurred as a

result of unreasonable and vexatious litigation behavior in a case.  The 2008 securities

---

[9]28 U.S.C. § 1927.

[10]*AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997) (quoting *White v. American Airlines, Inc*., 915 F.2d 1414, 1427 (10th Cir. 1990))(quotation marks deleted).

[11]*Hamilton v. Boise Cascade Exp*., 519 F.3d 1197, 1205-06 (10th Cir. 2008) (quoting § 1927) (bracketed material in original).

fraud case was specifically dismissed without prejudice after the Plaintiffs informed the presiding judge in that case that they planned to re-file their claims in a new case.  Under those circumstances, this Court cannot find that the re-filing of the claims in the present case was unreasonable or vexatious within the meaning of § 1927.

Further, the Court finds that motions for attorney fees under § 1927 based on filings in the 2008 securities fraud case would have been more appropriately brought in that case.  Finally, the Court notes that § 1927 limits recovery to fees "reasonably incurred."  None of the complaints in the 2008 security fraud case were ever served on Defendants herein. The Defendants herein never filed a single document or otherwise participated in that 2008 security fraud case.  Where Defendants did not participate in that case, the Court is at a loss to see how the filing of the original complaint or any of the amended complaints in that case, could have resulted in any attorney fees incurred by such un-served Defendants.

Accordingly, the Court will deny the Motion to Dismiss insofar as it is based on the events in the 2008 securities fraud case and § 1927.

Although the Heritage West Defendants joined in the Motion to Dismiss, they were not part of the state court action.  Thus, the compulsory counterclaim argument is not

applicable to them[12] and the Motion to Dismiss is denied as to the Heritage West Defendants.

V. COMPULSORY COUNTERCLAIM

*A.     Rule 13*

For the compulsory counterclaim rule, Defendants look to Rule 13 of the Federal Rules of Civil Procedure, whereas Plaintiffs rely on Rule 13 of the Utah Rules of Civil Procedure.

Under Fed.R.Civ.P. 13(a) a counterclaim is compulsory if it "(A) arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." The Utah rule is essentially the same and states that a claim is compulsory "if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not

---

[12]*See Ponderosa Development Corp. v. Bjordahl*, 787 F.2d 533, 536 (10th Cir. 1986) (holding that "[b]ecause plaintiffs' claim against defendants was not against an opposing party in the earlier action, it is not barred by the compulsory counterclaim doctrine").

acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13."

Because the rules are essentially identical, and because Utah courts interpreting the Utah Rules of Civil Procedure look freely to their federal law counterpart, this Court need not decide which rule to apply, but instead focuses on the essential elements.

### B.  The Thirty Plaintiffs Who Were Not Parties to State Court Action

The Castle Stone Defendants contend that the claims of the thirty Plaintiffs not included in the state court action should also be also be barred from the present case because their claims were also compulsory counterclaims in the state court action.   The Castle Stone Defendants argue that the inclusion of new parties should not change the result because it would be easy to get around Fed.R.Civ.P. 13(a).  In support, they cite *Avemco Insurance Co. v Cessna Aircraft Co.,*[13] for the proposition that the claims of a party, though not named as a party in the original litigation, are barred as compulsory counterclaims in a subsequent suit  "in a situation . . . where the insurer has controlled the defense in both actions, there is little to commend allowing the insurer to sit idly by during the subsequent litigation, only to bring a separate action against the very same defendant at a later date."[14]

The Court finds *Avemco* to be inapposite to the present case.  In *Avemco*, the dispositive fact was that Avemco, the plaintiff in the second action, brought that second

---

[13]11 F.3d 998 (10th Cir. 1993).
[14]*Id.* at 1001.

action as the insurer and subrogee of its insured—an insured who was a party-defendant in the earlier case.  Avemco's indemnification/contribution claim in the second case was a compulsory counterclaim that had not been raised by its insured, the defendant in the earlier case.  Because "an insurer as subrogee has no greater rights than those possessed by its insured, . . . its claims are subject to the same defenses" and since the insured would have been subject to Rule 13's compulsory counterclaim rule, the rule applied equally to the insurer Avemco as subrogee.[15]   The Tenth Circuit's subsequent analysis of the insurer's involvement in the earlier case related to the insurer's claim that application of the compulsory counterclaim rule to it as the insurer-subrogee of the original insured defendant violated its due process rights.[16]   The Plaintiffs in the present case do not bring their claims as subrogees.  Therefore, *Avemco*'s discussion of due process concerns when Rule 13 is applied to a subrogee is not relevant  to this case.

Another case relied on by the Castle Stone Defendants, *Rohn and Hasss Co. v. Brotch Corp.,*[17] is also inapposite.  In *Rohn*, a patent infringement case, the additional parties discussed in the quotes cited[18] by the Castle Stone Defendants, were *defendants*

---

[15]*Id.*

[16]*Id.* (holding that where the insurer's claim was "merely derivative" of the insured's; where the insured "had already had his day in court"; and where the insurer had been "involved in both actions," there was "no due process violation").

[17]770 F.Supp. 928 (D. Del. 1991).

[18]*Id.* at 934 (noting that "the addition of extra parties [as defendants] in the [the second case] does not affect the compulsory counterclaim issue" and therefore, "Rule 13(a) is not limited in its application to the original parties").

in the second action, not additional plaintiffs, and all were subsidiaries or employees of the plaintiff in the first action.[19]   *Rohn* did not involve the attempted application of the compulsory counterclaim rule against a plaintiff in a subsequent action who had not been a party, and therefore, had not been "opposing," in the first action, as is attempted in the present case.

In *Ponderosa Development Corp. v. Bjordahl*,[20] the Tenth Circuit found the compulsory counterclaim doctrine did not apply where the defendants against whom the plaintiff sought to assert a claim in the second case had not actually been "opposing" parties in an earlier case—even though the plaintiffs had sought unsuccessfully to join them in the earlier case—and, therefore, the plaintiffs' claim against those defendants was "not barred by the compulsory counterclaim doctrine."[21]

Similarly, the thirty Plaintiffs in this case were not "opposing" parties in the earlier state court action and, therefore, their claims are "not barred by the compulsory counterclaim doctrine."[22]

In the state court action, the Castle Stone Defendants did not bring their claims against any of the Plaintiffs herein, except Campbell and Vera.  There is nothing in the present record to show that the state court action's complaint was ever amended to

---

[19]*Id*. at 934-35.

[20]787 F.2d 533, 536 (10th Cir. 1986).

[21]*Id*. at 536.
[22]*Id.*

12

substitute any of the thirty Plaintiffs herein for that complaint's fictitiously-named defendants.[23]  Therefore, the Court need not determine if such an amendment could have related back for purposes of the compulsory counterclaim rule.

Having determined that only Campbell and Vera were opposing parties in the earlier state court action, the Court will next consider whether Campbell's and Vera's claims in the present action were compulsory counterclaims in that earlier action.

### C.   Application of the Same Transaction or Occurrence Analysis

The Castle Stone Defendants assert that all of Plaintiffs' claims arise out of the Castle Stone contracts to build homes for Plaintiffs, and that these contracts are the underlying transaction or occurrence between the parties.

Plaintiffs argue, however, that the facts involved in the State Case are not largely the same facts in this federal case, and thus the claims do not arise out of the same "transaction or occurrence."[24]  Furthermore, Plaintiffs contend that the issues of law are substantially different since the state court action involves defamation, civil conspiracy, and related claims arising out of the meeting, while the federal case involves securities

---

[23]The assertion that Castle Stone did not know the "precise identity" of the individuals for whom it had entered into written contracts to build homes strains credulity.  Yet, the Castle Stone Defendants submit an affidavit so stating. *See* Docket No. 11, at 15 ¶¶ 3-4.  However, such assertion is not relevant to the application of the compulsory counterclaim rule in the present case because, as stated above, there was no attempt to amend the state court action's complaint to substitute any subsequently identified individual for a fictitiously-named defendant.

[24]Fed. R.Civ. P. 13(a)(1)(A).

violations, breach of contract, and other related issues arising out of the underlying contracts.

The Tenth Circuit has "given the terms 'transaction' and 'occurrence'. . . flexible and realistic constructions in order to effect 'judicial economy', *i.e.*, trial in one action of all related controversies between the parties and, of course, the avoidance of multiplicity of suits."[25]

Rather than attempting to precisely define the terms "transaction" and "occurrence" the Tenth Circuit has instead suggested factors to determine whether a claim is permissive or compulsory.  These factors include: "(1) Are the issues of fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on defendants' claim absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute plaintiffs' claim as well as defendants' counterclaim? and (4) Is there any logical relation between the claim and the counterclaim?"[26]

Plaintiffs' Complaint in the present case contains the following causes of action against the Castle Homes Defendants:[27] (1) violation of Section 12(1) of the Securities Act;

---

[25] *Pipeliners Local Union No. 798 v. Ellerd*, 503 F.2d 1193, 1198 (10th Cir. 1974); *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926) ("'Transaction' is a word of flexible meaning.  It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.").

[26] *Pipeliners Local,* 503 F.2d at 1198.

[27] There are additional claims against other Defendants, such as the Heritage West Defendants, who were not involved in the state case.

(2) Violation of Section 12(2) of the Securities Act; (3) violation of Section 10(b) of the Exchange Act and Rule 10b-5; (4) violation of Utah Uniform Securities Act Section 61-1-22(1)(a); (5) negligent misrepresentation; (6) breach of contract; (7) breach of covenant of good faith and fair dealing; (8) quiet title; and (9) conversion and waste.

The state court action involved claims for: (1) fraud and misrepresentation; defamation; (2) false light; (3) tortious interference with contractual or business relationships; (4) civil conspiracy; (5) punitive damages; and (6) breach of contract.

However, the fact that each party did not bring claims on the exact same legal theories is not dispositive.  Courts have consistently held later claims to be compulsory counterclaims to earlier actions, even though the later claims involved a different body of law, when they are related to the same transaction or occurrence.[28]  Defendants contend that while the Federal Case contains different legal theories, they are still related to the same transaction or occurrence arising out of the contracts between the parties, at issue in the State Case.

Applying the factors, and having carefully considered the Complaint herein and the earlier state court action's complaint, the Court finds that the claims in the state court

---

[28]*See, e.g., Pochiro v. Prudential Ins. Co .,* 827 F.2d 1246, 1251-53 (9th Cir. 1987) (holding former employee's claims for defamation, abuse of process, breach of employment contract and intentional interference with business relationship to be compulsory counterclaims to employer's prior state court action against employee for appropriating confidential consumer information); *Eon Labs., Inc. v. Smithkline Beecham Corp.,* 298 F.Supp.2d 175, 182 (D.Mass. 2003) (holding state law antitrust, tortious interference, and unjust enrichment claims to be compulsory counterclaims to earlier federal patent infringement suit).

action involve two distinct sets of transactions and occurrences.  The first set—the fraud and misrepresentation and breach of contract claims (the contract-related claims)—are centered on the formation of the contracts and their subsequent alleged breaches.  These contract-related claims involve allegations of misrepresentations and omissions leading to the formation of the contracts and allegations of Defendant Campbell's subsequently representations, and Campbell and Vera alleged defaults.

The second set of claims—defamation, false light, tortious interference, and conspiracy (the defamation-related claims)—are centered on a series of communications, including communications at a meeting.  The two sets of claims involved generally separate facts: the facts relating to the contract-related claims occurred before the Vantus letter and the facts relating to the defamation-related claims generally occurring after the issuance of the Vantus letter.

Campbell's and Vera's claims herein against the Castle Stone Defendants, like their contract-based claims in the earlier state court suit, are based on allegations of the parties' representations leading up to the formation of the contracts.   In contrast, the Court finds that the state court action's defamation-related claims all arise from actions subsequent to the Vantus Letter, and, therefore, center on events well after the formation of the contracts and their alleged breach. As to those defamation-related claims, the Court finds as follows: the issues of fact and law raised by the defamation-related claims and the claims herein are not the same;  the same evidence would not support or refute both those defamation-related claims and the claims herein; there is not such a logical relationship

between those defamation-related claims and the claims herein that they should be tried together, and, if judgment had been entered therein on those defamation-related claims, res judicata and collateral estoppel would not bar the contract-related claims here. Therefore, the Court finds that the defamation-related claims were not compulsory counterclaims in the state court action.

Turning to the contract-related claims, the Court finds that the securities and negligent misrepresentation claims herein all arose from the same transaction or occurrence—entering into the client contracts—as do the state court action's claim for fraud and misrepresentation. Similarly, the respective breach of contract claims in the two actions involve the same contracts—the client contracts.  The claims herein also involve additional contracts—additional loans in the period before the Vantus letter and loan extensions sometime later.  But the inclusion of those additional contracts herein does not change the basic situation: the same evidence that would support or refute the contract-related claims in the state court action would also support or refute the "client contract" related securities and negligent misrepresentation claims herein. Thus, Campbell's and Vera's contract-related claims therein raise many of the same issues of fact and law as will be raised herein. With such a logical relationship between those contract-related claims and the claims herein, they should have been tried together. Finally, if judgment had been entered therein on those contract- related claims, it would be res judicata and collateral estoppel as to Campbell's and Vera's claims herein.

Accordingly, the Court finds that Campbell's and Vera's current claims for state and

17

federal securities law violation, negligent misrepresentation, breach of contract,  breach of covenant of good faith and fair dealing, and quiet title were compulsory counterclaims to the state court action's contract-related claims.  The Court will next address the effect of the state court action's dismissal without prejudice on the compulsory counterclaim rule.

### D.  Effect of the Dismissal Without Prejudice of State Court Action

Ordinarily, under the compulsory counterclaim rule, the Court's finding that Campbell's and Vera's claims herein against the Castle Stone Defendants were compulsory counterclaims in the state court action would require that those claims be dismissed in the present case.  However, the dismissal of the state court action without prejudice changes that result.

When the earlier state court action was pending, it would have been appropriate to dismiss Campbell's and Vera's claims and to require them to be brought as compulsory counterclaims in the still open earlier case.[29]  Such action would have served the purpose of having all of claims relating to the customer contracts, Campbell, Vera, and the Castle Stone Defendants heard in a single action.  This rationale is no long applicable when all of the claims in the earlier case are dismissed without prejudice and there is no preclusive effect to that dismissal.

_____

[29]*See Yanaki v. Iomed, Inc.*, 116 P.3d 962, 963 (Utah App. 2005) (affirming dismissal without prejudice under compulsory counterclaim rule and holding that requiring the plaintiff "to bring his claims from the [later] case as counterclaims in the [still open] first case will ensure that all the relevant claims arising out of his employment relationship . . . will be litigated in the same action").

The advisory committee note accompanying the adoption of Rule 13(a) explained: "If the [earlier] action proceeds to *judgment* without the interposition of a counterclaim as required by subdivision (a) of this rule, the counterclaim is barred."[30]  Thus, the application of the compulsory counterclaim rule applies equally when the earlier action is settled and its claims are resolved by a consent judgment, unless the settlement reserved the right of the defendant to subsequently bring an action on a counterclaim.[31]  Similarly, the compulsory counterclaim rule applies to cases where the earlier case was resolved by a default judgment or was dismissed with prejudice.[32]

However, some courts have held that where the claims in the earlier case are dismissed without prejudice there is no "judgment" and, therefore, no res judicata effect to the dismissal of the earlier action; the compulsory counterclaim is not barred by the failure to raise it in the dismissed case.[33]  The Court agrees with this interpretation of the compulsory counterclaim rule.  This is especially true where Utah R. Civ P. 13(e) provides that "when a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the

---

[30]Fed.R.Civ.P. 15, Advisory Committee Note (1937 adoption) (emphasis added).

[31]*See* 6 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 1417 at 133-35 (discussing application of rule and collecting cases).

[32]*Id.* at 135.

[33]*Id.*

counterclaim by amendment."[34]   Thus, under Utah law, so long as the earlier state court action was pending, there was still a possibility that Campbell and Vera could have raised their compulsory counterclaims therein.[35]   However, because that earlier case is now dismissed without prejudice, there is no judgment or other binding resolution of Campbell's and Vera's contract-related claims.  Under these circumstances, where there can be no preclusive effect of the earlier action, the compulsory counterclaim rule does not apply. Accordingly, the Court will deny the Motion to Dismiss as to Campbell and Vera.

E.    Request to Certify Order

The Castle Stone Defendants request that the Court certify the present ruling for an immediate interlocutory appeal. In relevant part, 28 U.S.C. § 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order. . . [36]

The Court finds that, as to the thirty Plaintiffs, there is not a substantial ground for

---

[34]Fed.R.Civ.P. 13(f) ("The court may permit a party to amend a pleading to add a counterclaim if it was omitted through oversight, inadvertence, or excusable neglect or if justice so requires.").

[35]See Tripp v. Vaughn, 746 P.2d 794 (Utah Ct. App. 1987) (affirming denial of motion for leave to amend to add a counterclaim where motion filed two weeks before trial, and there was no showing of either an adequate basis for the 13-month delay or lack of prejudice to opposing party).

[36]28 U.S.C. § 1292(b).

a difference of opinion on whether they are subject to the compulsory counterclaim rule because they were never parties to the earlier case.  While there may be grounds for a difference of opinion on the effect of the dismissal of the earlier state court case on the compulsory counterclaim rule as it applies to Campbell and Vera, a decision on those claims as to only two of the thirty-two Plaintiffs will not materially advance this litigation. Therefore, the Court finds that this is not an appropriate order for an interlocutory appeal.

## IV. ORDER

Based on the foregoing, it is

ORDERED that the Castle Stone Defendants' Motion to Dismiss and for attorney fees filed by the Castle Stone Defendants (Docket No. 4) is DENIED.  It is further

ORDERED that the Heritage West Defendants' Motion to Dismiss and for attorney fees (Docket No. 7) is DENIED.   It is further

ORDERED that the Castle Stone Defendant's Request to Certify Appeal (Docket No. 26) is DENIED.

DATED   November 10, 2009.

BY THE COURT:

_____

TED STEWART
United States District Judge